UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ISIAH MEADE,

        Plaintiff,

Case No. 1:12-cv-287

Hon. Gordon J. Quist

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.
                          /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion to dismiss (docket no. 11).

    **I.**    **Plaintiff's claims**

Plaintiff filed a *pro se* action against defendants Michigan Department of Corrections (MDOC), Ken Ryan, the assistant deputy warden at the G. Robert Cotton Correctional Facility (JCF), and Joanne Bridgford, the Americans with Disabilities Act (ADA) administrator at the MDOC. Compl. at ¶ III. Plaintiff's complaint alleges as follows. Plaintiff is blind. Compl. at ¶ V (docket no. 1). While at JCF, he received assistance from the facility's legal writer program. *Id.* On October 4 and 10, 2010, plaintiff kited defendant Ryan to provide him with a braille copy of the legal materials presented by the prisoner assigned to work on his criminal appeal. *Id.* Plaintiff made this request so that he could correct any errors made by the legal writer in drafting court documents. *Id.* Plaintiff was subsequently denied a braille copy of a state court motion for relief from judgment prepared by the legal writer in a state court case. *Id.* As a result, plaintiff was denied the ability to independently review the motion for errors or omissions. *Id.* Plaintiff received printed

copies of materials, but was not provided anyone to read the information to him or the opportunity to review the information at a later date without having another prisoner review his sensitive information. *Id.*

Plaintiff filed a grievance regarding his request (JCF-10-10-2390-14z) ("2390"). The response to grievance no. 2390 stated that the MDOC's Central Office was contacted and determined that the preparation of a braille transcript of plaintiff's state court brief was not considered a reasonable accommodation (i.e., "MDOC does not offer Braille Services as a Reasonable Accommodation"). *Id.* The Step I response was upheld on appeal. *Id.* While braille services are not offered, plaintiff admits in his complaint that "JCF does accommodate blind prisoners with special selected prisoner assistance," including accommodations with respect to leisure reading materials but not legal materials. *Id.* Plaintiff, however, has not alleged the specific nature of these accommodations. *Id.*

On October 20, 2011, plaintiff filed another grievance (DRF 11-10-10-2008-18a) ("2008") against defendant Bridgford. *Id.* In grievance no. 2008, plaintiff grieved his inability to assist "in the preparation of ongoing appeals because the material is not provided in a braille or audio format." *Id.* In response to this grievance, defendant Bridgford stated that "since [p]laintiff receives assistance from the legal writer program adequate assistance is being provided and there is no need for additional accommodations to be provided." *Id.*

Plaintiff alleged that while the legal writer program "prepares pleadings" for him, that program "does not assist [p]laintiff with reading the books to him or shepardizing cases." *Id.* Plaintiff has requested that the case law be read to him. In this regard, defendant Bridgford denied plaintiff's "request for a 'modified' digital talking book player" for use in the legal context. *Id.*

2

Plaintiff admits that the MDOC has approved his request for a digital book reader, but he now requests that this machine "be outfitted with the key that would allow access to legal information." *Id.*

For his relief, plaintiff seeks: (1) a temporary injunction requiring the MDOC to provide him with a braille or audio copy of the pleadings prepared by the legal writer program; (2) a court order requiring the MDOC to comply with ADA mandates and to make legal and grievance responses accessible through braille or audio; (3) a court order to allow modification of the digital reader so that plaintiff may independently research legal documents; (4) punitive damages; (5) a jury trial; (6) appointment of counsel ("[p]laintiff being blind will be at a sever[e] disadvantage in replying and preparing for trial"); and (7) that this Court reply in braille or audio format so that he may independently review the Court's responses and orders. Compl. at p. 4. The court has previously denied plaintiff's request for appointment of counsel and for the court to reply in braille or audio format. *See* Order (docket no. 5); Order denying motion for reconsideration (docket no. 10).

## II. Defendants' motion to dismiss

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants do not specify which section of Fed. R. Civ. P. 12(b) they rely on as the basis for dismissing this action nor do they provide the court with a legal standard in which to apply to their motion. The court will construe defendants' motion as seeking dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

**B.    ADA claim**

Plaintiff's ADA claim is brought pursuant to 42 U.S.C. § 12131 *et seq*. ("Title II").

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

4

> discrimination by any such entity." [42 U.S.C.] § 12132 (2000 ed.). A " 'qualified individual with a disability' " is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines " 'public entity' " to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). We have previously held that this term includes state prisons. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). *See also*, *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("The ADA applies to both federal and state prisons.").

In the case of a blind prisoner, the "auxiliary aids and services" referenced in § 12131(2) include such accommodations as "qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments." *Mason v. Correctional Medical Services, Inc.*, 559 F.3d 880, 886 (8th Cir. 2009), citing 28 C.F.R. § 35.104(2). "While a public entity is required to make reasonable accommodations where necessary to give meaningful access to programs or benefits, the entity need not make available auxiliary aids and services if it can show that to do so would be unduly burdensome." *Id.* (internal quotation marks and citations omitted). *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004) ("Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities," rather, Title II "requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service."). Accordingly, for plaintiff to state an ADA claim, he must allege that defendants have excluded him

5

from participating in or have denied him, the benefits, services, programs or activities which are available to other inmates at the MDOC. *See, e.g., Gratton v. Smith*, No. 1:12-cv-526, 2012 WL 4057264 at *6 (W.D. Mich. Sept. 14, 2012) ("to state an ADA claim, Plaintiff must allege that Defendants have prevented him from participating in or receiving the benefits of services, programs, or activities available to other inmates").

As an initial matter, defendants assert that plaintiff has not alleged in his complaint a prima facie case of discrimination under the ADA. *See* Defendants' Brief at pp. ii (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) ("To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability") (internal quotation marks omitted). It is not necessary, however, for plaintiff to allege a prima facie case of discrimination in his complaint. A prima facie case is an evidentiary standard for resolving discrimination cases on a motion for summary judgment, not a pleading requirement under the plausibility standard applicable to a motion to dismiss. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("[t]he prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement"); *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint [alleging discrimination] establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent. . . Therefore, it was error for the district court to require [the plaintiff] to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss"). For purposes of a

6

motion to dismiss, the court "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The issue before the court is whether defendants violated the ADA when they failed to accommodate plaintiff's blindness by providing him with braille services or some type of audio format to review documents prepared by a legal writer. In *Mason*, 559 F.3d 880, the court rejected a blind inmate's claim that he was denied meaningful access to prison benefits, including library benefits. *Id.* at 887. The Missouri Department of Corrections took the position that it had provided plaintiff with "meaningful access" to the prison benefits "by providing an inmate reader, who is available to read to [plaintiff] in person and to create audio tapes of written material at [plaintiff's] request, and by granting [plaintiff] access to audio materials by mail and to a tape recorder." *Id.* Plaintiff asserted that his reader was not always available, that the prison should provide him a "qualified reader" or interpreter to read to him as necessary (including grievance forms for his signature), and that he be provided training in Braille or computer software that reads written materials aloud to the blind. *Id.* While plaintiff complained that his reader was not always available, he provided only one example of such unavailability (a parole hearing), and could not "point to anything about the absence of an assistant that prevented him from presenting his case at that hearing." *Id.* Based on this record, the court held that there was no disputed issue of material fact as to whether the plaintiff's accommodations gave him meaningful access to prison benefits involving reading and writing, concluded that the present accommodations were sufficient, and that it was unnecessary to consider alternative accommodations such as braille materials or computer software. *Id.*

Here, defendants assert that plaintiff, like the plaintiff in *Mason*, "has not alleged or presented any evidence that the assistance he received from the Legal Writers Program was illusory, non-existent, or in any way deficient or insufficient" and that "[t]o the contrary, [plaintiff] asserts in his Complaint that with the provided assistance he was able to file his motion for relief from judgment regarding his criminal conviction." Defendants' Brief at p. 5. Defendants, however, suggest that this court apply an inappropriate standard in this case. Unlike *Mason*, the present motion is not one for summary judgment. In order to defeat defendants' motion to dismiss, plaintiff does not have a burden of presenting evidence to support his position. Rather, plaintiff only needs "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Plaintiff's complaint has alleged that he is blind, that the accommodations he has received are inadequate, that he is being denied benefits, services, programs or activities which are available to other inmates at the MDOC (e.g., the ability to fully utilize a legal writer), and that defendants have denied his request for additional accommodations. At this juncture, the court concludes that plaintiff has alleged an ADA claim that is plausible on its face. Once a factual record is developed regarding (among other things) the extent of plaintiff's disability, the specific accommodations provided to him by the MDOC, and the reasonableness of providing him with additional or alternative accommodations, the court will be in a position to address whether genuine issues of fact exist as to plaintiff's claim. Accordingly, defendants' motion should be denied to the extent it seeks dismissal for failure to state a claim for relief under the ADA.

**C.     Individual defendants**

Plaintiff has sued two defendants, Ken Ryan and Joanne Bridgford, in both their official and individual capacities. Compl. at ¶ III. Plaintiff's individual capacity claims fail because

Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009). "[T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity." *Id.* Plaintiff's official capacity claims against Ryan and Bridgford are in actuality claims against the State of Michigan as the real party in interest. *See Mingus*, 591 F.3d at 482 ("[i]t is undisputed that since [the defendant, a state correctional facility's health unit manager] has been sued in her official capacity, [the plaintiff prisoner's] ADA claim is, for all intents and purposes, against the state of Michigan as the real party-in-interest"). Since Ryan and Bridgford appear in this litigation solely for the purpose of representing their state agency employer, and that state agency is also named as a defendant, there is no reason to keep Ryan and Bridgford as defendants in this litigation. Plaintiff's claims against them are redundant of the claims asserted against their employer, the MDOC. *See Sagan v. Sumner County Board of Education*, 726 F.Supp.2d 868, 876 (M.D. Tenn. 2010) (dismissing plaintiff's official capacity claim against defendant after noting "that a claim against an individual in her official capacity is tantamount to a claim against the employer and that where, as here, the employer is also sued, the official-capacity suit against the employee is simply redundant and may be dismissed") (citing cases). Accordingly, plaintiff's claims against Ryan and Bridgford should be dismissed.

### D. Punitive damages

Defendants seek dismissal of plaintiff's claim for punitive damages because such damages may not be awarded in suits brought under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under §

202 of the ADA [ 42 U.S.C. § 12132] and § 504 of the Rehabilitation Act"). In his response, plaintiff agrees that he is not entitled to this relief and "drops his request for punitive damages." Response at ¶ 4 (docket no. 14).

   **E.**  **Access to court claim**

   Defendants construe plaintiff's complaint as including a claim that he was denied access to the courts and seek dismissal of this claim. The court, however, does not view plaintiff's complaint as alleging this particular violation. It is well established that "*pro se* complaints are held to even 'less stringent standards than formal pleadings drafted by lawyers.'" *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979). *See also Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 437 (6th Cir. l988) ("A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."), quoting *O'Brien v.DiGrazia*, 544 F.3d 543, 546 n. 3 (1st Cir. 1976). A plaintiff must allege with at least some degree of particularity the acts which constitute the violation of his rights. *See Morgan*, 829 F.2d at 12.

   "A prisoner asserting a First Amendment denial of access to the courts claim must show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Whiteside v. Parrish*, 387 Fed.Appx. 608, 613 (6th Cir. 2010). While plaintiff's ADA claim allegedly arose while he was pursuing a motion for relief from judgment under MCR 6.500 *et seq.*, there is no allegation that plaintiff suffered an actual injury in that proceeding due to the

MDOC's failure to accommodate his disability. In this regard, plaintiffs complaint does not seek relief for denial of access to the courts. Accordingly, defendants' motion should be denied with respect to this claim.[1]

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (docket no. 11) be **GRANTED** as to defendants Ryan and Bridgford, **GRANTED** as to plaintiff's claims for punitive damages and **DENIED** as to defendant Michigan Department of Corrections. I further recommend that defendants' motion to dismiss be **DENIED** as moot to the extent it addresses a First Amendment Access to the court claim, on the basis that the court finds plaintiff has brought no First Amendment claim in his complaint.

Dated: February 11, 2013  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] The individual defendants, Ryan and Bridgford, have also requested dismissal on the ground of qualified immunity. Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is unnecessary to address the request for qualified immunity because plaintiff has failed to state a claim against either Ryan or Bridgford.

11