UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISIAH MEADE,

        Plaintiff,

Case No. 1:12-cv-287

Hon. Gordon J. Quist

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Michigan Department of Corrections (MDOC) is the sole remaining defendant. This matter is now before defendant MDOC's motion for summary judgment (docket no. 18) and plaintiff's motion for a preliminary injunction (docket no. 22).

    **I.**    **Plaintiff's claims**

The Court previously summarized the claims set forth in plaintiff's complaint as follows:

> Plaintiff filed a *pro se* action against defendants Michigan Department of Corrections (MDOC), Ken Ryan, the assistant deputy warden at the G. Robert Cotton Correctional Facility (JCF), and Joanne Bridgford, the Americans with Disabilities Act (ADA) administrator at the MDOC. Compl. at ¶ III. Plaintiff's complaint alleges as follows. Plaintiff is blind. Compl. at ¶ V (docket no. 1). While at JCF, he received assistance from the facility's legal writer program. *Id.* On October 4 and 10, 2010, plaintiff kited defendant Ryan to provide him with a braille copy of the legal materials presented by the prisoner assigned to work on his criminal appeal. *Id.* Plaintiff made this request so that he could correct any errors made by the legal writer in drafting court documents. *Id.* Plaintiff was subsequently denied a braille copy of a state court motion for relief from judgment prepared by the legal writer in a state court case. *Id.* As a result, plaintiff was denied the ability to independently review the motion for errors or omissions. *Id.* Plaintiff received printed copies of

materials, but was not provided anyone to read the information to him or the opportunity to review the information at a later date without having another prisoner review his sensitive information. *Id.*

Plaintiff filed a grievance regarding his request (JCF-10-10-2390-14z) ("2390"). The response to grievance no. 2390 stated that the MDOC's Central Office was contacted and determined that the preparation of a braille transcript of plaintiff's state court brief was not considered a reasonable accommodation (i.e., "MDOC does not offer Braille Services as a Reasonable Accommodation"). *Id.* The Step I response was upheld on appeal. *Id.* While braille services are not offered, plaintiff admits in his complaint that "JCF does accommodate blind prisoners with special selected prisoner assistance," including accommodations with respect to leisure reading materials but not legal materials. *Id.* Plaintiff, however, has not alleged the specific nature of these accommodations. *Id.*

On October 20, 2011, plaintiff filed another grievance (DRF 11-10-10-2008-18a) ("2008") against defendant Bridgford. *Id.* In grievance no. 2008, plaintiff grieved his inability to assist "in the preparation of ongoing appeals because the material is not provided in a braille or audio format." *Id.* In response to this grievance, defendant Bridgford stated that "since [p]laintiff receives assistance from the legal writer program adequate assistance is being provided and there is no need for additional accommodations to be provided." *Id.*

Plaintiff alleged that while the legal writer program "prepares pleadings" for him, that program "does not assist [p]laintiff with reading the books to him or shepardizing cases." *Id.* Plaintiff has requested that the case law be read to him. In this regard, defendant Bridgford denied plaintiff's "request for a 'modified' digital talking book player" for use in the legal context. *Id.* Plaintiff admits that the MDOC has approved his request for a digital book reader, but he now requests that this machine "be outfitted with the key that would allow access to legal information." *Id.*

For his relief, plaintiff seeks: (1) a temporary injunction requiring the MDOC to provide him with a braille or audio copy of the pleadings prepared by the legal writer program; (2) a court order requiring the MDOC to comply with ADA mandates and to make legal and grievance responses accessible through braille or audio; (3) a court order to allow modification of the digital reader so that plaintiff may independently research legal documents; (4) punitive damages; (5) a jury trial; (6) appointment of counsel ("[p]laintiff being blind will be at a sever[e] disadvantage in replying and preparing for trial"); and (7) that this Court reply in braille or audio format so that he may independently review the Court's responses and orders. Compl. at p. 4. The court has previously denied plaintiff's request for appointment of counsel and for the court to reply in braille or audio format. *See* Order (docket no. 5); Order denying motion for reconsideration (docket no. 10).

Report and Recommendation at pp. 1-3 (docket no. 16).

## II. Defendants' motion for summary judgment

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

3

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Plaintiff's ADA claim

Plaintiff's ADA claim is brought pursuant to 42 U.S.C. § 12131 *et seq.* ("Title II").

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." [42 U.S.C.] § 12132 (2000 ed.). A " 'qualified individual with a disability' " is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines " 'public entity' " to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). For purposes of the ADA, a public entity includes state prisons. *Id.* at 154, citing *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). *See also*, *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("The ADA applies to both federal and state prisons."). In addition, Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. *Georgia*, 546 U.S. at 154, *citing* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

4

In the case of a blind prisoner, the "auxiliary aids and services" referenced in § 12131(2) include such accommodations as "qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments." *Mason v. Correctional Medical Services, Inc.*, 559 F.3d 880, 886 (8th Cir. 2009), citing 28 C.F.R. § 35.104(2). "While a public entity is required to make reasonable accommodations where necessary to give meaningful access to programs or benefits, the entity need not make available auxiliary aids and services if it can show that to do so would be unduly burdensome." *Id.* (internal quotation marks and citations omitted). "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004). Rather, Title II "requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Id.* at 532.

Here, plaintiff's complaint alleged that the MDOC violated the ADA by refusing his requests for auxiliary aids which include a braille or audio copy of pleadings prepared by the MDOC's Legal Writer Program, braille or audio copies of "legal and grievance responses", and modification of the digital reader (sometimes referred to as a digital talking book player) so that he could independently research legal documents. Specifically, plaintiff alleged that he was unable to independently review and correct a motion for relief from judgment prepared by a Legal Writer and filed in the Wayne County Circuit Court pursuant to MCR 6.500 *et seq.* Compl. at ¶ V.

Defendant contends that the accommodations provided to plaintiff were reasonable and provided him with access to the court. First, on January 5, 2009 (more than three years prior to filing this lawsuit), JCF Assistant Deputy Warden (ADW) Ryan referred plaintiff to the Legal

5

Writer Program for legal assistance at the correctional facility. *See* Memorandum from ADW Ryan re: Law Library Assistance (docket no. 14-1 at p. 71). The Legal Writer Program provides trained legal assistance to qualified recipients by researching and drafting necessary legal documents, letters and forms. *See* Legal Writer Manual (October 15, 2006) (docket no. 19-2).

Second, on April 20, 2010, C. DeForest, Classification Director at JCF, advised plaintiff that he was being provided with a Reading and Writing Assistant in the unit to assist plaintiff with tasks for which he needed someone to read to him. *See* Memorandum from C. DeForest re: Kite Response (docket no. 21-1 at p. 4). Plaintiff was advised, however, that the Reading and Writing Assistant was not to assist him in performing legal work because plaintiff had been assigned a legal writer for that purpose:

> This is in response to your kite about someone reading to you in the library. You feel this service has not been allowed for you. You also felt I misunderstood your request as you already have a legal writer but want someone to read law to you.
>
> I have provided you with a Reading and Writing Assistant in the unit. He assists you on task [sic] where you need to be read to. It becomes a fine line when you want them to read legal work to you as we do not allow prisoners to help each other with legal work any longer. The library informant [sic] me they have offered you the opportunity to use the general library on Sunday nights. As of yet you have not taken advantage of this offer and still do not have a library callout.
>
> You and your assistant may get with Ms. Cooke and she will set up Sunday nights for you to take advantage of the library. What you need to understand is that your assistant is not to be doing your legal work, and this will be monitored. Your legal writer is the one who handles issues of the court for you.

*Id.*

Third, in October 2011, plaintiff was advised that he had access to a digital talking book player through the Service for the Blind and Physically Handicapped (SBPH). *See* Joanne Bridgford Letter (October 5, 2011) (docket no. 14-1 at p. 38). However, plaintiff's request for an

6

advanced digital talking book player to be used for law materials from the Recordings for the Blind & Dyslexic (RFB & D) program was denied. *See* Koenigsknecht Memorandum (Oct. 5, 2011) (docket no. 14-1 at pp. 39-40). Records submitted to the Court reflect that MDOC personnel contacted Ms. Chinault, the manager of the SBPH at the Library of Michigan, with respect to plaintiff's request. *Id.* Ms. Chinault confirmed that the RFB & D program included more educational materials than was available through the SBPH, but that the digital talking book player approved for prisoner use at the MDOC was not able to play the RFB & D program without installing additional software to the player. *Id.* Consequently, each recording available from the RFB & D program would have to be downloaded, formatted and added to the standard SBPH digital card. *Id.* Ms. Chinault indicated that the SBPH would be willing to download requested recordings from the RFB & D for prisoner use as long as the requests were reasonable. *Id.* After considering this information, MDOC Deputy Director Finco did not approve of downloading additional material from the RFB & D which was not currently authorized for MDOC prisoners. *Id.* In short, plaintiff was not allowed to modify his digital talking book player to incorporate legal material from the RFB & D.

In his affidavit in opposition to defendant's motion, plaintiff stated as follows. He was totally blind and unable to read printed material without assistance. Meade Aff. at ¶ 1 (docket no. 21-5). The legal writer assigned to plaintiff's motion for relief from judgment did not allow plaintiff to participate in the drafting of the motion or offer his views on the "types of issues" that he wanted to present. *Id.* at ¶ 8. Because plaintiff did not participate in the drafting of the motion, the motion did not raise any of the issues which plaintiff wanted to present. *Id.* at ¶ 9. Although plaintiff stated that there were "errors, omissions, misspellings and other problems" with the motion,

7

he identified only two problems. *Id.* at ¶ 11. First, there was an erroneous statement that he was serving 16 to 40 years for murder. *Id.* Second, plaintiff was referred to as "Mr. Blindness." *Id.* Finally, plaintiff stated that "[a]ll the Legal Writers" denied him the right "to participate in the process which affects [his] liberty and to allow [him] to have a voice in the process." *Id.* at ¶ 10.[1]

Viewing the evidence in the light most favorable to the nonmoving party (plaintiff), the Court concludes that while plaintiff did not receive precisely the technical relief he sought, defendant provided plaintiff with reasonable accommodations. A prisoner who receives assistance from the Legal Writer Program is, by definition, not able to prepare his or her own court documents. *See* Legal Writer Program Manual, ¶ III.A.(3) (a prisoner is eligible for the Legal Writer Program if he "[h]as a documented physical or mental impairment or a learning disability which may affect his/her ability to use the law library to prepare and file a legible and coherent pleading"). MDOC Policy Directive 05.03.115 ¶ S contemplates that prisoners will meet with Legal Writers to review the documents prepared by the Legal Writer:

> After meeting with the prisoner, the legal writer will prepare all necessary pleadings, motions, and other documents for the prisoner under the direction of off-site private attorneys under contract with the Department. If the prisoner receiving the assistance is dissatisfied with the quality of the documents received, s/he may address the matter with the legal writer; however, the Legal Writer Program does not operate as a "typing service" for the prisoner and changes will not be made solely based on the prisoner's personal preferences (e.g., different formatting; phrasing of legal argument).

MDOC Policy Directive 05.03.115 ¶ S. *See* Legal Writer Program Manual, ¶ IV.C. ("The area assigned to legal writers must include space for the prisoner requesting assistance to meet with his/her assigned legal writer. Confidentiality for these meetings is not required, although the

---

[1] The Court notes that plaintiff's affidavit also refers to a conflict with a Legal Writer arising from the preparation of a Standard 4 Supplemental Brief to the Michigan Court of Appeals. *See* Meade Aff. at ¶¶ 5-6. However, plaintiff has not raised this particular claim in his lawsuit.

8

meeting space should be located where other prisoners, not assigned as legal writers, cannot overhear what is being said.").

Pursuant to Policy Directive 05.03.115 ¶ S and the Legal Writer Manual ¶ IV.C., a prisoner who relies on a Legal Writer to prepare court documents is allowed to review those documents for errors prior to filing. Plaintiff, as a blind prisoner, should have that same opportunity. Based on the record before the Court, defendant has provided plaintiff with that opportunity through the use of a Reading and Writing Assistant who could perform the limited task of reading the contents of proposed court documents to plaintiff. While the Reading and Writing Assistant could not "read law" to plaintiff or assist him in legal research, plaintiff had a Legal Writer to perform these tasks. *See* Memorandum from C. DeForest re: Kite Response (referring to the "fine line" which exists between a Reading Assistant reading information to plaintiff and the Reading Assistant helping plaintiff with legal work which is to be performed by plaintiff's Legal Writer). Under these circumstances, defendant has provided plaintiff with reasonable accommodations for his disability. Accordingly, defendant's motion for summary judgment should be granted.

### III.  Plaintiff's motion for preliminary injunction

Plaintiff has filed a motion for a preliminary injunction seeking a Court order requiring defendant to provide him with the following accommodations: that defendant provide plaintiff with accessible Braille copies or audio narrations of judicial filings, motions, briefs and any other law related documentation prepared for plaintiff by the Legal Writer program; that defendant provide plaintiff with "accessible copies" of grievance responses; and that defendant provide plaintiff with a modified digital talking book to perform legal research. *See* Motion for Preliminary Injunction (docket no. 22).

9

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). *See, e.g.*, *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) ("[t]he general function of a preliminary injunction is to maintain the status quo pending determination of an action on its merits"). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil Company*, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted).

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *Fort Wayne Women's Health Organization v. Brane*, 734 F.Supp. 849, 850 (N.D. Ind. 1990). Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our

correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548.

In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). The four factors listed above are meant to be balanced as they guide the court in exercising its discretion; they are not due rigid application and need not be assigned equal weight. *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). The court's discretion is directed at the weight to be given each factor, and the effect to be accorded their mix. While a court need not consider any single factor as either indispensable or dispositive, neither is it required to conclude that all four support its decision. However, it is well established that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Board of Medical Examiners,* 225 F.3d 620, 625 (6th Cir. 2000). Finally, the movant bears the burden of persuading the court that the factors weigh in favor of granting a preliminary injunction. *Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 432, 441 (1974).

### A. Likelihood of success on the merits

As discussed, plaintiff has failed to demonstrate a strong or substantial likelihood or probability of success on the merits of his ADA claim. On the contrary, the undersigned has

concluded that defendant is entitled to summary judgment with respect to that claim. Accordingly, the court concludes that this factor strongly favors defendant.

### B. Irreparable Injury

The "key word" in determining the extent of an injury sufficient to support the award of injunctive relief is "irreparable." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Mere injuries, however substantial, are not enough. *Id.* Rather, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.* "In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* (internal citations omitted). Plaintiff has not presented any reason why the requested extraordinary accommodations are necessary at this particular time. Plaintiff has not shown that he is unable to access the courts due to the alleged insufficiency of the MDOC's accommodations. Indeed, plaintiff has been able to access this Court in the present litigation. Under these circumstances, it appears that defendant has accommodated plaintiff's impairment and that he is not suffering from irreparable injury. Accordingly, this factor favors defendant.

### C. Substantial harm to others

There is no evidence before the court that the requested injunctive relief will, or will not, cause substantial harm to others. Accordingly, this factor is neutral.

### D. Public interest

Plaintiff does not seek a court order to maintain the status quo. Rather, plaintiff seeks to have this court direct the MDOC to provide him with additional accommodations, at least one of which (the advanced digital talking book with additional material from the RFB&D program) is not

authorized for use by MDOC prisoners. Plaintiffs' requested injunctive relief would require this court to intervene in defendant's day-to-day operation of its Legal Writer program and its current method of accommodating visually impaired prisoners with Reading and Writing Assistants and digital readers. These issues are best left to the state's prison officials.

> [J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.

*Bell v. Wolfish*, 441 U.S. 520, 548 (1979). The issuance of a preliminary injunction in this case would unnecessarily intrude into these day-to-day operations. The record does not suggest that defendant's operation of the correctional facility poses such a threat to plaintiff that this court must intervene during the pendency of this lawsuit and exercise its judgment in place of the professional judgment of defendant's employees. Accordingly, this factor favors defendant.

### E. Evaluation of the four factors

After reviewing the four factors relevant to issuing injunctive relief, the court draws the following conclusions. First, plaintiff does not have a strong or substantial likelihood of success on the merits of his ADA claim against defendant. Second, plaintiff has not presented any reason why these extraordinary accommodations are necessary at this particular time and has not demonstrated that he will not suffer irreparable harm. Third, the issue of whether the issuance of a preliminary injunction will cause substantial harm to others is neutral. Fourth, there exists a strong public interest in having defendant, rather than this court, manage its programs which accommodate disabled prisoners who suffer from visual impairments like plaintiff. For these reasons, the court concludes that plaintiff's motion for a preliminary injunction should be denied.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant MDOC's motion for summary judgment (docket no. 18) be **GRANTED**, that plaintiff's motion for a preliminary injunction (docket no. 22) be **DENIED** and that this action be **TERMINATED**.


Dated: February 4, 2014                /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).